UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dexter Saffold,<br><br>    Plaintiff,<br><br>v.<br><br>South Suburban College,<br><br>    Defendant. | Case No. 14 CV 7468<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dexter Saffold ("Plaintiff" or "Saffold"), a visually impaired individual, enrolled in General Education Development ("GED") classes at Defendant South Suburban College ("Defendant" or "South Suburban") for the 2014 fall semester. Plaintiff claims he was disenrolled during the first week of class because Defendant refused to accommodate his disability. Plaintiff now brings a cause of action for discrimination under Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* On October 21, 2015, Defendant filed a motion for summary judgment. Def.'s Mot. Summ. J. [27]. For the reasons discussed below, that motion is denied.

I.    **Background**

Defendant offers a tuition-free, grant-funded GED program as part of its Adult Education curriculum. Def.'s Mot. Summ. J. [27] Attach. 1 ¶ 2. Plaintiff, who is legally blind, took advantage of these courses dating back to 2012. Saffold Dep.

1

44:22-45:15. During those past semesters, Plaintiff applied, and was approved for, academic accommodations for his visual impairment disability. Def.'s Mot. Summ. J. [27] Attach. 1 ¶ 9.

On September 8, 2014, Plaintiff once again registered for Defendant's GED program. *Id*. ¶ 1. Once again, Defendant approved academic accommodations for Plaintiff. *Id*. ¶ 6. These accommodations included every accommodation offered by Defendant for visually impaired students. *Id*. ¶¶ 6-7. They encompassed, among others, preferential seating, tape recorded lectures, distraction reduced testing, test dictation, and extended test time.[1] Def.'s Mot. Summ. J. [27] Ex. B, Attach. 2. Most relevant to the present motion, they also included the provision of a student note taker for class sessions. *Id.*; Bonds-Carpenter Dep. 12:13-21. Defendant acknowledges that it was aware of Plaintiff's academic accommodations for the fall 2014 semester. Def.'s Mot. Summ. J. [27] Ex. A ¶ 9.

Plaintiff's GED class began on Monday, September 15, 2014 and took place every weekday. Plaintiff claims that, despite his previously approved accommodation, a note taker was not present at the first class session. Saffold Dep. 15:24-16:2; 16:21-22. In an attempt to correct the apparent oversight, Plaintiff complained to the GED Office and the Services for Students with Disabilities Office, to no avail. *Id.* at 16:24-21:14. Plaintiff asserts that these events repeated themselves on Tuesday, September 16, at which point an individual from the GED

---

[1] In full, Plaintiff's accommodations included (1) preferential seating; (2) tape recorded lecture; (3) note taker; (4) test or class material in large print, tape, or diskette; (5) distraction reduced testing; (6) extended test time; (7) test dictation; and (8) test scribe. Def.'s Mot. Summ. J. [27] Ex. B, Attach. 2.

office stood in as his note taker. *Id*. at 15:24-16:2; 21:13-22:20. Plaintiff claims that on Wednesday, September 17, his note taker showed up an hour and a half late. *Id*. at 23:14-21; 64:16-19.

On Thursday, September 18, Plaintiff's note taker failed to show up yet again. Saffold Dep. 26:3-7. At that point, Plaintiff complained to Ms. Gail Bonds-Carpenter ("Bonds-Carpenter"), Defendant's Manager of Services for Students with Disabilities. *Id*. at 26:11. Plaintiff alleges that, during his meeting with Bonds-Carpenter, she told him that student note takers did not "know how to work with people" who were "visually impaired or blind." *Id*. at 27:16-18; 53:3-9. Plaintiff states that Bonds-Carpenter further told him that "blind people or people visually impaired can't be in the [GED] program" because Defendant did not have a way of "working with [them]." *Id*. at 10:20-24; 50:23-51:3. Plaintiff claims that Bonds-Carpenter told him, "we dropped you because we can't work with you." *Id*. at 30:15-16.

Plaintiff alleges that, despite Bonds-Carpenter's proclamations, he returned to class on Friday, September 19. *Id*. at 11:11-23; 37:21-22. Once again, no note taker was provided. *Id*. at 66:3-8. After class, Plaintiff complained to Bonds-Carpenter's superior, Ms. Patrice Burton ("Burton"). *Id*. at 12:1-2; 37:2-4. According to Plaintiff, Burton scheduled a meeting between Plaintiff, Burton, and Bonds-Carpenter to take place on Monday, September 22. *Id*. at 48:5-8. Due to his frustration, however, Plaintiff did not attend that meeting, and did not return to

class. *Id.* at 48:9-18. Instead, Plaintiff filed the present lawsuit on September 25, 2014. Compl. [1].

Contrary to Plaintiff's allegations, Defendant maintains that Plaintiff *was* provided a note taker on September 15, 16, 17, and 18. Bonds-Carpenter Dep. 13:22-15:24; 17:10-19. Moreover, although Bonds-Carpenter acknowledges that a note taker failed to show up on one morning, she asserts that a substitute note taker filled in the same day. *Id.* at 18:24-20:8. Additionally, Bonds-Carpenter denies advising Plaintiff that Defendant could not provide accommodations for visually impaired students or that visually impaired individuals could not attend GED classes. *Id.* at 27:17-28:4; 29:1-3.

Defendant alleges that a South Suburban policy in effect during the fall 2014 semester mandated that two absences during the first two weeks of the GED course resulted in a student being disenrolled. Def.'s Mot. Summ. J. [27] Attach. 1 ¶ 3. Defendant claims that Plaintiff was absent on Monday, September 15 and Thursday, September 18, 2014, and therefore was dropped in accordance with this policy. *Id.* ¶ 4. Plaintiff disputes the existence of such a policy, and claims he was never told that his disenrollment was due to absence. Pl.'s Resp. Def.'s Mot. Summ. J. [47] Attach. 2 ¶¶ 3-4; Saffold Dep. 49:3-5.

## II. Legal Standard

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.,* 175 F.3d 497, 504 (7th

4

Cir.1999) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). Summary judgment is only appropriate if the moving party can establish that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). In making a summary judgment determination, the Court must "construe all facts and reasonable inferences in favor of the non-moving party." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 653 (7th Cir. 2010).

## III. Analysis

Passed in 1973, the Rehabilitation Act seeks to "empower individuals with disabilities" through the "guarantee of equal opportunity." 29 U.S.C. § 701. Similarly, as an expansion of the Rehabilitation Act, the 1990 Americans with Disabilities Act endeavors to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); s*ee Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006).

In pursuit of these purposes, the Rehabilitation Act mandates that no "otherwise qualified individual with a disability" shall, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Likewise, Title II of the ADA states that "no qualified person with a disability shall, by reason of such disability, be excluded

5

from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. To that end, ADA regulations require public entities to make "reasonable modifications in policies, practices, or procedure . . . unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Because Title II of the ADA "was modeled after § 504 of the Rehabilitation Act," the "elements of claims under the two provisions are nearly identical," the "precedent under one statute typically applies to the other," and the "standards applicable" to each law are generally interchangeable. *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 845 n. 6 (7th Cir. 1999). The "chief difference between the two statutes is that the Rehabilitation Act applies only to entities receiving federal funding," *id.*—a fact not in dispute in the case at bar. Def.'s Mot. Summ. J. [27] at 2. Therefore, Plaintiff's claims under both statutory regimes will be considered together.

To make a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show that: (1) he suffers from a disability as defined in the statutes; (2) he is qualified to participate in the program in question; and (3) he was either excluded from participating in or denied the benefit of that program based on his disability. *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 974 (7th Cir. 2015) (citing *Jackson v. City of Chicago,* 414 F.3d 806, 810 (7th Cir. 2005)).

6

Regarding the third factor, the "sole question that matters" is whether a reasonable juror could conclude that Plaintiff would have been allowed to participate in, or receive the benefit of, Defendant's GED program had Plaintiff not suffered from a visual impairment, and "everything else had remained the same." *Ortiz v. Werner Enterprises, Inc.*, No. 15-2574, slip op. at 6 (7th Cir. Aug. 19, 2016). A plaintiff may show this causative element through either direct or circumstantial evidence. *Novak*, 777 F.3d at 974.

Direct evidence "is evidence that one can interpret as an acknowledgment" of "discriminatory intent," *Rothman*, 123 F.3d at 451, and typically "requires an admission by the decision maker that his or her actions were based upon the prohibited animus." *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Naturally, entities "are usually careful not to offer overt remarks revealing discrimination." *Id.* Therefore, if "such explicit evidence is not available—which will often be the case," *Rothman*, 123 F.3d at 451, "circumstantial evidence that allows a jury to infer intentional discrimination is also permissible." *Dickerson*, 657 F.3d at 601. Circumstantial evidence includes suspicious timing; ambiguous statements or behavior towards others in the protected group; evidence, statistical or otherwise, that similarly situated individuals outside of the protected group systematically receive better treatment; and evidence that the defendant offered a pretextual reason for an adverse employment action. *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 659–60 (7th Cir. 2013).

Whether direct or circumstantial, however, evidence "must be considered as a whole" and not "sorted into different piles." *Ortiz*, No. 15-2574, slip op. at 9. Ultimately, this Court must evaluate the "overall likelihood of discrimination." *Id*. at 6. "Evidence is evidence"; the different types "are just means to consider whether one fact" (here, disability) "caused another" (here, Plaintiff's exclusion from Defendant's GED program). *Id*. Under this "unified approach," all evidence is "considered together to understand the pattern it reveals." *Id*. at 7.

Turning to the present dispute, a reasonable fact finder could find that Plaintiff has established a prima facie case. In its motion, Defendant does not challenge that Plaintiff suffers from a disability or was otherwise qualified to participate in Defendant's GED program. Thus, summary judgment turns on (1) Plaintiff's alleged exclusion and (2) its purported motivations. Here, genuine, material disputes exist as to both issues.

First, Plaintiff claims he was denied the benefit of Defendant's GED program because Defendant failed to provide Plaintiff with a note taker and wrongly dropped Plaintiff from the course. Ostensibly, both denials constitute unlawful exclusion. *See* 42 U.S.C. §§ 12103, 12182 (discrimination includes a failure to provide "auxiliary aids," including "effective methods of making visually delivered materials available to individuals with visual impairments"); *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 641 (7th Cir. 2015) (finding discrimination under Rehabilitation Act and ADA to be sufficiently pled where plaintiff alleged that teachers tried to "push him out of their classes").

Plaintiff also creates a triable issue as to whether Defendant's actions were based upon Plaintiff's disability. Bonds-Carpenter's alleged statements that student note takers did not "know how to work with people" who were "visually impaired or blind"; that "blind people or people visually impaired can't be in the [GED] program" because Defendant did not have a way of "working with [them]"; and that Defendant "dropped [Plaintiff] because [it] can't work [him]," Saffold Dep. 10:20-24; 27:16-18; 30:15-16; 50:23-51:3; 53:3-9, are precisely the sort of "admission by the decision-maker" contemplated by the direct method. *See Dickerson*, 657 F.3d at 601.

Defendant's assertions that (1) a note-taker *was* provided, and (2) Bonds-Carpenter's discriminatory statements were never made are, for the moment, immaterial. On summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Equally unavailing is Defendant's claim that Plaintiff failed to follow South Suburban's procedure for modifying academic accommodations. Def. Mot. Summ. J. [27] Attach. 2 at 4. Here, Plaintiff did not seek a modification, but rather fulfillment of an accommodation previously approved. Def.'s Mot. Summ. J. [27] Ex. B, Attach. 2.

Finally, Defendant cannot find sanctuary under its purported attendance policy. Plaintiff maintains that he *did* attend class throughout the week of September 15, Pl.'s Resp. Def.'s Mot. Summ. J. [47] Attach. 2 ¶¶ 3-4; Saffold Dep.

9

49:3-5, and at this stage, this Court cannot resolve genuine factual disputes. *Harris v. comScore, Inc.*, 825 F. Supp. 2d 924, 927 (N.D. Ill. 2011).

In short, the record before this Court presents conflicting versions of the central facts of this case. Where "the parties present two vastly different stories—as they do here—it is almost certain that there are genuine issues of material fact in dispute." *Id*. Such controversies are not suitable for summary judgment.

## IV. Conclusion

In light of the foregoing, Defendant's Motion for Summary Judgment [27] is denied.

IT IS SO ORDERED

Dated: August 22, 2016                   Entered:

                                          John Robert Blakey
                                          United States District Court Judge